IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-1-RJ

| | | |
|---|---|---|
| DEBORAH JEAN GAINEY, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-23, -25] pursuant to Fed. R. Civ. P. 12(c). Claimant Deborah Jean Gainey ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded for further proceedings consistent with this order.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on July 17, 2008, alleging disability beginning March 1, 2007. (R. 316-22, 332). Both claims were denied initially and upon reconsideration. (R. 124-27). A hearing before an Administrative Law Judge ("ALJ") was held on September 9, 2010, at which Claimant was represented by counsel. (R. 100-

22). On October 21, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 131-41). On April 27, 2012, the Appeals Council granted Claimant's request for review, vacated the hearing decision, and remanded the case to the ALJ for resolution of several issues. (R. 167-71). A second administrative hearing before the same ALJ was held on July 12, 2012, at which Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 45-81). On July 27, 2012, the ALJ issued a decision denying benefits. (R. 26-38). On November 5, 2013, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded*

2

*by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3),

3

416.920a(e)(3).

In this case, Claimant alleges the ALJ erred (1) in evaluating her treating physician's opinion and (2) in evaluating evidence relevant to her mental residual functional capacity ("RFC"). Pl.'s Mem. [DE-24] at 10-22.

## IV. FACTUAL HISTORY

### A.     ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since March 1, 2007, the alleged onset date. (R. 28). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, obesity, chronic obstructive pulmonary disease ("COPD"), and depression. (R. 29). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in her activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence and pace, and no episodes of decompensation of an extended duration. (R. 29-30).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] specifically that Claimant can lift and carry up to 20 pounds

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there
(continued...)

4

occasionally and 10 pounds frequently and stand, walk, and sit for six hours each in an eight-hour workday with normal breaks. (R. 30). The ALJ further imposed the following limitations: occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; avoid fumes; understand, remember, and carry out simple instructions; interact occasionally with co-workers and supervisors; and take rest breaks on a scheduled basis that would equal one hour a day during an eight-hour workday. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 31). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 37). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 37).

**B.     Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's July 12, 2012 administrative hearing, Claimant was 36 years old and living with her parents and daughter. (R. 49, 68). Claimant has a GED and last worked for three months in 2007 at a printing company. (R. 49, 61-62). Her duties included making labels for medicine bottles, packaging the bottles in boxes, and palleting the boxes for shipment. (R. 61). Claimant lifted boxes weighing approximately 15 pounds each. *Id.* She would take unscheduled breaks due to back pain, going into the bathroom to cry and going outside to smoke cigarettes. (R. 62). Claimant also worked in farrowing at a hog farm operation, as a press operator at a dye company, and as a water meter programmer. (R. 62-63). She believes she is unable to perform any

---

[1](...continued)
are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

of her past work due to her back problems and difficulty breathing. (R. 63).

Claimant is 5 feet 6 inches tall and at the time of the hearing weighed approximately 272 pounds; she believes her weight adversely impacts her other conditions. (R. 49, 66). Claimant has back, neck, and breathing problems. (R. 50-51). She gained 100 pounds over the past few years, which exacerbated her back problems. (R. 50). Claimant takes Lorcet and Tramadol for pain. (R. 53). Her back goes out about every six weeks and she is unable to walk or get off the couch where she sometimes sleeps, requiring help to get to the bathroom. (R. 55-56). The last episode persisted for two weeks before her back pain improved. *Id.* Her pain medication does not always work, and she believes she may have developed a tolerance to it. (R. 57). Claimant indicated her pain level at the hearing was a four on a scale of one to ten with ten being the greatest level of pain. *Id.* Claimant has difficulty standing and walking due to edema in her feet and legs. (R. 59). She experiences swelling in her feet and legs approximately every two weeks and it takes three to four days to subside. *Id.* As a result, Claimant must ride in an electric cart to shop. *Id.* She can stand for at most an hour before having to sit and elevate her feet. (R. 59-60). Claimant is never comfortable sitting and constantly changes positions. (R. 60-61). Claimant also experiences swelling in her hands and face. (R. 61). Claimant was recently diagnosed with plantar fasciitis in her heels and a bone spur in her left heel, which cause pain and hinder her ability to walk. (R. 64).

Due to COPD and smoking two to three packs of cigarettes daily, Claimant has difficulty breathing in the mornings for one to two hours. (R. 51). Claimant uses three inhalers (Symbicort, Spiriva, and Proventil) and takes prednisone, but they are not effective. (R. 51, 53). Inhaling chemical fumes, such as household cleaners, and extreme temperatures exacerbate her breathing problems. (R. 63-64). Her doctor advised her to quit smoking, but she has anxiety and smoking

6

calms her nerves. (R. 51). Claimant was also told she has manic depression and post traumatic stress disorder. *Id.* To help with these problems, in addition to smoking cigarettes, Claimant sometimes drinks alcohol and takes Cymbalta and Lorazepam. (R. 52). The medications are not always effective and cause drowsiness and nausea. *Id.* Claimant's treating physician has referred her to a psychiatrist for therapy, but she does not have a car and is unable to see all the doctors that have been recommended. (R. 53). Claimant no longer has a driver's license and does not drive. (R. 58-59).

On a typical day, Claimant gets up in the morning, sometimes needing assistance, and takes her medications. (R. 67). Then she coughs for about an hour to clear her congestion before moving to a recliner. *Id.* Sometimes she tries to wash clothes or do a small task if she can, but her mother mostly does the housework and Claimant sits in the recliner. *Id.* Claimant cannot stand at the stove and so her mother cooks. (R. 69). Claimant falls asleep around lunch time and when she gets up her back is hurting from sitting in the recliner for too long and so she takes more medicine. (R. 67). Claimant lifts nothing heavier than a gallon of milk and cannot bend, twist, stoop, kneel, or climb more than two or three stairs due to her back problems. (R. 69-70).

### C. Vocational Expert's Testimony at the Administrative Hearing

Dr. Arthur Schmidt, a vocational expert and psychologist, testified as a VE at the administrative hearing. (R. 70-81). After the VE's testimony regarding Claimant's past work experience (R. 71-73), the ALJ asked the VE to assume an individual who is 36 years old and has the equivalent of a high school education, can perform light work, occasionally climb ramps and stairs, never climb ladders, avoid concentrations of fumes, can understand, remember, and carry out simple instructions, and occasionally interact with co-workers and supervisors (R. 73). The VE

7

opined that the hypothetical individual could not perform Claimant's past relevant work, but could perform the jobs of storage facility clerk, light, unskilled, DOT # 295.367-026; ticket taker, light, unskilled, DOT # 344.667-010; and coupon redemption clerk, light, unskilled, DOT # 290.477-010. (R. 73-74). The ALJ then added to the first hypothetical the limitation that rest breaks be taken on a scheduled basis equaling one hour in an eight-hour day. (R. 74). The VE opined that the listed jobs would not be precluded by the further limitation. *Id.* The ALJ then altered the additional limitation to require unscheduled breaks that average two hours in each eight-hour workday, and the VE opined the limitation would preclude all work. *Id.*

Claimant's attorney clarified with the VE that the limitation to understand, remember, and carry out simple instructions was the equivalent of being limited to simple, routine, repetitive tasks. (R. 74-75). Claimant's attorney asked whether changing the first hypothetical to a sedentary exertion level would preclude work, and the VE responded in the negative. (R. 75). Claimant's attorney next asked whether the VE agreed with the conclusion in Dr. Pearsall's consultative vocational report that no work would be available for an individual with two GAF scores of 50 given roughly one year apart. *Id.* The VE indicated that as a vocational expert he could not testify to that, but as a psychologist he would agree that there would be no work for an individual with a GAF score of 50. *Id.* The VE also testified that a limitation to no interaction with the general public would eliminate the jobs of storage facility clerk and ticket taker, but not the coupon redemption clerk job. (R. 76-77). The VE clarified that the scheduled breaks limitation from the second hypothetical was the industry standard—15 minute breaks in the morning and afternoon and a thirty minute to an hour break at lunch—and that more breaks than this would preclude all jobs. (R. 78-79). The VE classified the limitations described by Claimant as accommodating less than sedentary work, which

would preclude all jobs. (R. 79).

## V. DISCUSSION

### A. Treating Physician's Opinion

Claimant contends the ALJ failed to evaluate her treating physician's opinions in accordance with 20 C.F.R. § 416.927 and rejected his opinions for infirm reasons. Pl.'s Mem. at 10-19. The Commissioner contends that the ALJ properly analyzed the treating physician's opinion. Def.'s Mem. [DE-26] at 17-28. The court concludes that the ALJ erred in evaluating the treating physician's opinion and remand is required.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

9

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citing *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (unpublished) (citations & quotations omitted).

Dr. James Maxwell is Claimant's treating physician. (R. 460-61). On November 6, 2009, Dr. Maxwell completed a physical residual functional capacity questionnaire indicating he had been

10

treating Claimant for four years and that she had been diagnosed with lumbar and cervical disc disease with a guarded prognosis. (R. 525-27). Dr. Maxwell noted severe low back pain radiating to both legs and severe neck pain exacerbated by all movement, severely painful range of motion and restricted flexion and extension, and limitation of function with concomitant depression. (R. 525). Dr. Maxwell treated Claimant with analgesics and antidepressants. *Id.* Dr. Maxwell characterized Claimant's depression as severe and indicated it affected her physical conditions. (R. 526). He further indicated that Claimant had lost considerable function in the past two years and could not perform even sedentary work. (R. 526-27). In a similar questionnaire completed by Dr. Maxwell on the same day, he further indicated that Claimant would require hourly unscheduled breaks, could only occasionally lift less than ten pounds, could never twist, stoop, squat, or climb ladders or stairs, and would likely be absent from work more than four days a month due to her impairments. (R. 569-70).

The ALJ gave Dr. Maxwell's opinions little weight, explaining as follows:

In November 2009 the claimant's primary care physician, Dr. Maxwell, completed a physical residual functional capacity questionnaire, in which it was stated that the claimant had been seen for the past four years, and was diagnosed with both lumbar and cervical disc disease with a guarded prognosis, that was evident from severely painful range of motion, along with restricted flexion and extension. Further, it was stated that the claimant suffered from severe depression, although moderate stress was okay, as stress was not an issue, but the claimant's ability to function was. This opinion found that the claimant could not sit longer than one hour at a time, and could not stand at all, and that she would be unable to perform even sedentary work. (Exhibit 13F). In a second opinion completed at the same time, Dr. Maxwell stated that the claimant could sit and stand/walk less than two hours total during an eight hour day, occasionally lift less than 10 pounds and rarely lift up to 10 pounds, and that she would be absent from work more than four days per month as a result of her impairments or treatment. Dr. Maxwell further noted that the claimant's symptoms and limitations began in February 2007. (Exhibit 16F). The two opinions of Dr. Maxwell have been considered, but have been given little weight. The opinions of Dr. Maxwell are not consistent with the treatment records. In his treatment notes, the

11

> claimant failed to ever complain about such restricting limitations in her ability to sit or stand, and objective evidence fails to show any severely painful range of motion. Additionally, there is no objective evidence to validate Dr. Maxwell's opinion that the claimant would miss more than four days of work per month.

(R. 35-36).

Claimant first contends that the reasons provided by the ALJ are contradicted by the evidence. The ALJ stated that Claimant "failed to ever complain about such restricting limitations in her ability to sit or stand." (R. 35). In that vein, the Commissioner argues that the severe restrictions opined to by Dr. Maxwell are not supported by Claimant's complaints reflected in the treatment notes. Def.'s Mem. at 20-21. While Claimant did in fact complain to Dr. Maxwell that her pain limited her ability to sit and stand on some occasions, *see* (R. 424) (March 18, 2008 - indicating pain affects her ability to bend, stand, and sit); R. (444-46) (Nov. 16, 2006 - indicating pain affects her ability to stand and bend), her complaints were generally that if she had less pain she could do more household chores, bending, twisting, and lifting, *see, e.g.*, (R. 424, 437, 449, 475, 479, 632, 641). However, as Claimant points out, the ability to do household chores necessarily involves standing and other postural movements. Pl.'s Mem. at 15-16. Furthermore, Claimant also frequently reported that on her worst days her pain was in the range of eight to ten, which would impact her ability to stand, sit or walk for two or more hours in an eight-hour workday. (R. 424, 430, 434, 475, 546, 550, 556, 562).

The ALJ also stated that "objective evidence fails to show any severely painful range of motion." (R. 36). Dr. Maxwell's treatment notes are replete with references to Claimant's limited range of motion. *See, e.g.*, (R. 562) (Jan. 21, 2009 - abnormal back and left/right flexion and extension); (R. 558) (May 6, 2009 - same); (R. 613) (March 8, 2010 -same). The Appeals Council,

12

in the remand order, noted as much, finding that Dr. Maxwell's treatment notes include new findings of a positive straight leg raise and further decreased lumbar range of motion. (R. 169). Furthermore, in one of the more recent treatment notes from September 8, 2011, Dr. Maxwell noted back pain and limited range of motion "with elicitation of pain." (R. 641-42). Additionally, Dr. Cohen, a consultative examiner, also found Claimant had limited range of motion of the thoracolumbar spine. (R. 468-69). Finally, the ALJ required objective evidence of Claimant's *severe pain* with range of motion, and this was error. *See Moates v. Bowen*, 862 F.2d 314, 1988 WL 118153, at *2 (4th Cir. 1988) (unpublished) ("The requirement that a claimant provide 'objective medical evidence' does not, however, require objective evidence of pain itself or the degree of intensity.").

The Commissioner suggests, in support of the ALJ's conclusion, that Dr. Maxwell never placed any specific limitations on Claimant's activities. Def.'s Mem. at 21. Claimant was not working during the time in question, and there is no evidence in the record of Claimant engaging in any other activities from which she would have required limitation. Thus, the fact that Dr. Maxwell's treatment notes reflect no specific limitations does not undermine his opinions.

The Commissioner also suggests Dr. Maxwell's opinions are inconsistent with the objective medical evidence and other opinion evidence of record, including the opinions of Drs. Cohen, Wadon, Schell, Melzer, and McKnight and the state agency consultants. First, the ALJ did not offer these reasons in support of his decision to afford little weight to Dr. Maxwell's opinions, and the court declines to speculate regarding reasons other than those offered by the ALJ. *See Abernathy v. Astrue*, No. 4:08-CV-99-FL, 2009 WL 1578533, at *3 (E.D.N.C. June 3, 2009) ("[T]he ALJ may have had a proper reason . . . [;] [h]owever, the court will not undertake to hazard a guess as to what such valid reasons might be."). Moreover, it is questionable as to whether these opinions would in

13

fact justify rejection of a treating physician's opinion. For example, with respect to the state agency consultants' opinions the ALJ stated that because these consultants were non-examining, their opinions "do not as a general matter deserve much weight," but he gave them "some weight as they are supported by the objective evidence of record."[2] (R. 36). Given the limited weight assigned by the ALJ and the lack of substantive analysis, it seems unlikely the ALJ relied on these opinions in discounting Dr. Maxwell's opinion. Likewise, the ALJ gave Dr. McKnight's opinion and part of Dr. Meltzer's opinion little weight, casting doubt on any reliance by the ALJ on these opinions as a basis for rejecting Dr. Maxwell's opinion. (R. 35-36). Finally, Dr. Cohen's opinion from September 2008 was based on a one-time examination of Claimant that was almost four years old at the time of the ALJ's decision, and Dr. Cohen lacked the benefit of the longitudinal evidence regarding Claimant's treatment for her back pain.

The undersigned is cognizant of the deferential standard of review applied to the ALJ's evaluation of medical opinions: "[A]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) (unpublished) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992) & citing 20 C.F.R. §

---

[2] It is noteworthy that the ALJ concludes this discussion by citing to the exhibits in the record containing not only the state agency consultants' opinions, but also the opinions of Dr. Maxwell. *See* (R. 36) (citing Exs. 7F, 8F, 10F, 11F, 13F, and 16F). Therefore, the ALJ's decision contains conflicting findings regarding the weight afforded Dr. Maxwell's opinions. *Compare* (R. 35) (affording Dr. Maxwell's opinions at Exhibits 13F and 16F little weight), *with* (R. 36) (affording Exhibits 13F and 16F some weight). This same error by the ALJ in the first decision was one of the grounds cited by the Appeals Council in vacating and remanding the ALJ's first decision. *See* (R. 168-69) (noting the hearing decision contains conflicting findings regarding the weight given to Dr. Maxwell's opinions at Exhibits 13F and 16F); (R. 138-40) (first affording little weight Dr. Maxwell's opinions at Exhibits 13F and 16F, and later affording significant weight to the opinions at Exhibits 13F and 16F).

14

404.1527(d)). However, the reasons provided here by the ALJ for affording little weight to Dr. Maxwell's opinions are not well-supported by the record. Furthermore, consideration of the 20 C.F.R. §§ 404.1527 and 416.927 factors undermines the weight afforded Dr. Maxwell's opinions where he was an examining and treating physician, he treated Claimant for more than five years, and his opinions find support in the treatment notes. Accordingly, the ALJ's evaluation of Dr. Maxwell's opinions is not supported by substantial evidence, and this case must be remanded for reconsideration of the medical opinion evidence. Given that this error alone justifies remand, the court declines to address the additional issues raised by Claimant.

**B.     Credibility Assessment**

Although not specifically raised by Claimant, the court finds it necessary to address the ALJ's credibility assessment. The ALJ's decision contains certain boilerplate language regarding Claimant's credibility. (R. 31) (stating that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."). In the March 18, 2015 published decision of *Mascio v. Colvin*, -- F.3d --, No. 13-2088, 2015 WL 1219530 (4th Cir. Mar. 18, 2015), the Fourth Circuit Court of Appeals determined the use of this boilerplate language is error. However, the *Mascio* court also indicated that "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." *Id.* at *6. The ALJ does provide some further discussion regarding Claimant's credibility (R. 34-35), but it likewise contains clear error. For example, the ALJ stated that Claimant testified as to swelling in her legs and feet but that no swelling or edema was ever noted by a physician. (R. 34). The Appeals Council's remand order specifically addresses reported swelling, noting that on September 2010 Claimant presented with 2+ pitting edema consistent with

15

her complaints at the hearing and with photographs contained at Exhibit 21F. (R. 168). Further, the ALJ discredited Claimant's subjective complaints from her 2012 hearing testimony based in part on its inconsistency with a function report she completed in August 2008, almost four years earlier. *See* (R. 34) ("The claimant's function report is inconsistent with her testimony that she is too limited."). This is particularly problematic where the record reflects that Claimant's condition was deteriorating over the relevant time period as evidenced by her 100 pound weight gain, resulting in a diagnosis of morbid obesity, and worsening back problems. *See, e.g.*, (R. 169, 613, 629, 641-42, 661); *cf. Brooks v. Colvin*, No. 7:13-CV-161-D, 2014 WL 3535113, at *6 (E.D.N.C. June 23, 2014) (unpublished) (finding "of concern" the ALJ's reliance on the disparity between plaintiff's description of her condition in 2009 and her doctor's characterization of her condition as stable in 2012, more than two and a half years later), *adopted by* 2014 WL 3534089 (E.D.N.C. July 16, 2014). The court cannot find in light of these errors that the ALJ's credibility assessment is legally sufficient. On remand, the ALJ shall reassess Claimant's credibility and "explain how he decided which of [Claimant's] statements to believe and which to discredit . . . ." *Mascio*, 2015 WL 1219530, at *6.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-23] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-25] is DENIED and the case is REMANDED for further proceedings consistent with this order.

SO ORDERED, this the 24th day of March 2015.

Robert B. Jones, Jr.
United States Magistrate Judge